(No. 40732.—

METHODIST OLD PEOPLES HOME, Appellant, *vs.* BERNARD J. KORZEN, County Treasurer, *et al.,* Appellees.—(THE CITY OF EVANSTON, Intervenor-Appellee.)

*Opinion filed January 19, 1968.*

150

WARD, J., took no part.

SPRAY, PRICE, HOUGH & CUSHMAN, of Chicago, (CRANSTON SPRAY, ROBERT S. CUSHMAN, and BENNO P. LUDWIG, of counsel,) for appellant.

JOHN J. STAMOS, State's Attorney, of Chicago, and JACK M. SIEGEL, Corporation Counsel, of Evanston, (EDWARD J. HLADIS, Chief of Civil Division, and RONALD BUTLER, Assistant State's Attorney, of counsel,) for appellees.

PER CURIAM: Plaintiff, Methodist Old Peoples Home, an Illinois not-for-profit corporation, filed a complaint in the circuit court of Cook County seeking a declaratory judgment that the Georgian Home, owned by it in Evanston, is exempt from taxation; that liens of 1964 and 1965 real-estate taxes on said property are void, and that defendants be enjoined from collecting taxes for those and subsequent years. The city of Evanston was permitted to intervene and the cause was referred to a master in chancery who found that plaintiff's real estate was not exempt and recommended denial of the relief sought. The trial court entered a decree in accordance with the master's report and dismissed the complaint. Since the revenue is involved plaintiff has appealed directly to this court.

The sole question presented for review is whether or not plaintiff's property is exempt from taxation under our constitution and the applicable statute. Plaintiff bases its claim for exemption on its assertion that the property is used for charitable purposes, more specifically as an old people's home pursuant to the provisions of section 19.7 of the Revenue Act of 1939. Ill. Rev. Stat. 1965, chap. 120, par. 500.7, as amended by H.B. 1328 passed by the 1967 General Assembly.

Plaintiff was incorporated as an Illinois not-for-profit corporation in 1896. It has no capital stock or stockholders, but is comprised of a membership of 200 to 300 individuals, three quarters of whom are required to be members of the Methodist Church. The affairs of the corporation are managed and supervised by a board of 24 managers. Managers are elected for a term of three years, and terms are so

staggered that eight or more must be elected or re-elected annually. Management supervisory functions are divided and assigned to committees selected from the board. Among these is an application committee which, according to plaintiff's bylaws, "shall receive, consider, and approve or reject all applications for admission to the home under the provisions of Article 6 of the by-laws and rules established by the board, * * *." Plaintiff's corporate purposes, set forth in its charter as amended are as follows: "To establish and maintain a suitable home or homes and necessary auxiliary institution for old people; to provide proper accommodations and care for the sick and homeless aged; * * * and to receive gifts and execute trusts therefor."

Plaintiff has owned and operated one old peoples home since its corporate inception. In 1962 it acquired the property now in question in the form of a residential hotel located in Evanston, Illinois. After extensive remodeling and alteration it commenced operating the property as a home for the aged under the name of the Georgian Home on January 1, 1964. Persons seeking to reside in the home are required to submit detailed statements as to their health, financial condition and personal history. Admission is by election of the applications committee as previously stated. According to plaintiff's bylaws, "applicants shall be in good mental, emotional and physical health, and free of any communicable disease. They shall be ambulatory and able to see and hear well and take care of their personal needs." Furthermore, "no person shall be admitted who is senile, afflicted with insanity, epilepsy or other disease which, in the judgment of the medical staff and the superintendent, are detrimental to the interest of the home or homes."

Upon being accepted, the prospective resident must execute a written form agreement obligating him to pay a so-called Founder's Fee and a monthly service charge. Both the Founder's Fee and the service charge are based on the size and location of the quarters to be assigned, correspond-

ing in principle with the type of rate structure one would find in a commercially operated co-operative multiple dwelling property. The Founder's Fee varies from $6,250 to $25,000 and the monthly charge from $175 to $375. According to the contract these monthly charges may be increased to reflect a resident's equitable share of any increased costs of operation. The Founder's Fee is amortized over the life expectancy of the resident and each year's portion is allocated to current operating costs.

The agreement provides a 60-day trial period during which either the resident or the home may terminate the arrangement. If termination is within that period, the Founder's Fee is refunded less any costs incurred by the trial resident. Thereafter any refunding is solely at the discretion of the plaintiff. As of the time of hearing nearly all of plaintiff's funds were provided from Founder's Fees, and no gifts, bequests or donations had been received.

There is nothing in either plaintiff's bylaws or the agreement it makes with the resident, compelling it to continue providing care and shelter for any resident who may become financially unable to meet his monthly charges or who may become unmanageable because of illness. Furthermore, while the bylaws provide for considering applicants who may be unable to meet the usual financial requirements, there is no provision therein binding upon the admissions committee to admit such applicants.

It is to be noted that the general tenor of health and financial requirements set forth in plaintiff's bylaws are at odds with its chartered purpose of providing "proper accommodation and care for the sick and homeless aged."

Plaintiff asserts that its use of the Georgian Home property meets the requirements of section 19.7 of the Revenue Act of 1939 as amended by H.B. 1328 passed by the 1967 General Assembly and is therefore entitled to tax exemption.

Prior to amendment, section 19.7 of the Revenue Act

of 1939 (Ill. Rev. Stat. 1965, chap. 120, par. 500.7) included in the enumeration of property which is exempt from taxation the following: "All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States, and all property of old people's homes, when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit; and all free public libraries."

After the trial court's decree, but prior to the submission of briefs in this appeal, the foregoing statute was amended by House Bill 1328, passed by the 1967 General Assembly. That amendment merely added the following language to section 19.7: "The words 'old people's homes' as used in this section shall include any old peoples home licensed by the State of Illinois and owned by a not-for-profit corporation or organization and operated not for profit under the auspices of a religious, fraternal, charitable or other nonprofit organization which old peoples home provides housing, meals, laundry and infirmary services to aged persons and which is financed wholly or in part by charges made to its residents or wholly or in part by endowment, gifts or bequests or by a combination of the foregoing. This definition shall be construed declaratory of the existing law and not as a new enactment. No hospital, however, which has been adjudicated by a court of competent jurisdiction to have denied admission to any person because of race, color or creed shall be exempt from taxation." However, that amendment must be construed in the light of section 3 of article IX of the constitution of Illinois, which reads in part as follows: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery

and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law."

Since the terms of article IX of the constitution subject all property generally to taxation, the courts have strictly construed statutes granting tax exemptions and have insisted that they keep clearly within the boundaries set forth in the constitution. (*MacMurray College* v. *Wright,* 38 Ill.2d 272; *Kiwanis International* v. *Lorenz,* 23 Ill.2d 141; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286.) The burden of proving the right to exemption is upon the party seeking it, and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. (*Kiwanis International* v. *Lorenz,* 23 Ill.2d 141; *Rotary International* v. *Paschen,* 14 Ill.2d 480.) Plaintiffs must show that its organization and the use of its property came within the provisions of the statute and the constitution.

It is not disputed that plaintiff is a not-for-profit corporation owning an old peoples home duly licensed by the State of Illinois and operating not for profit under the auspices of a religious organization and that it provides facilities and services as contained in the wording added by House Bill 1328.

However, as we stated in *Locust Grove Cemetery Ass'n* v. *Rose,* 16 Ill.2d 132, on page 137, "the statute cannot be made broader than the provisions of the constitution and no property except that mentioned in the section can be exempted by any law passed by the legislature." The legislature could not declare that property used by an old peoples home as defined in the amendatory portion of House Bill 1328 is *ipso facto* property used exclusively for charitable purposes and therefore tax exempt. It is the province of the courts, and not the legislature, to ascertain whether or not the particular property, including property used as an

old peoples home, is "used exclusively for charitable purposes" within the meaning of the constitutional provision. See *People ex rel. Lloyd* v. *University of Illinois,* 357 Ill. 369.

In interpreting House Bill 1328 we must assume that the legislature did not intend to exceed its constitutional limitations. As we stated recently, "it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked." *Illinois Crime Investigating Commission* v. *Buccieri,* 36 Ill.2d 556, 561. See also *MacMurray College* v. *Wright,* 38 Ill.2d 272; *Follett's Illinois Book and Supply Store, Inc.* v. *Isaacs,* 27 Ill.2d 600.

In keeping with such assumption we hold that the legislature did not intend to deviate from the constitutional requirement that to be exempt from taxation the property of an old peoples home must be used exclusively for charitable purposes. In amending section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1965, chap. 120, par. 500.7) House Bill 1328 did nothing more than add language which was descriptive and illustrative of "old people's homes." Any doubts concerning this are dispelled by its statement that "this definition shall be construed as declaratory of the existing law and not as a new enactment."

The concept of property use which is exclusively charitable does not lend itself to easy definition. Therefore each individual claim for tax exemption must be determined from the facts presented. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *People ex rel. Goodman* v. *University of Illinois Foundation,* 388 Ill. 363.) However, though past decisions of this court provide no precise formula for resolving questions of purported charitable use, they do furnish guidelines and criteria which should be generally applied.

It has been stated that a charity is a gift to be applied,

consistently with existing laws, for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens of government (*Crerar v. Williams,* 145 Ill. 625); that the distinctive characteristics of a charitable institution are that it has no capital, capital stock or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and *holds them in trust for the objects and purposes expressed in its charter, (People ex rel. Cannon v. Southern Illinois Hospital Corp.,* 404 Ill. 66; *People ex rel. Hellyer v. Morton,* 373 Ill. 72; *Congregational Sunday School and Publishing Society v. Board of Review,* 290 Ill. 108); that a charitable and beneficent institution is one which dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses, (*Sisters of Third Order of St. Francis v. Board of Review,* 231 Ill. 317); that the statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used, (*Skil Corp. v. Korzen,* 32 Ill.2d 249; *People ex rel. Pearsall v. The Catholic Bishop of Chicago,* 311 Ill. 11); and that the term "exclusively used" means the primary purpose for which property is used and not any secondary or incidental purpose. These principles constitute the frame of reference to which we must apply plaintiff's use of its property to arrive at a determination of whether or not such use is in fact exclusively for charitable purposes.

It is undisputed that plaintiff's corporate structure and its abstinence from profit making in a private sense are akin to that of a charitable institution. However, the variance

between its stated chartered purpose of providing "proper accommodations and care for the sick and homeless aged;" and the health requirements contained in its bylaws that "applicants shall be in good mental, emotional and physical health, and free of any communicable disease," militates strongly against the requirement that it hold property in trust for the objects and purposes expressed in its charter.

While charging fees would not necessarily remove plaintiff from the category of a charitable institution (*American College of Surgeons* v. *Korzen,* 36 Ill.2d 340, 348; *People* v. *Y.M.C.A.,* 365 Ill. 118), the fact that it allocates living space from the standpoint of desirability of location and size on the basis of the amount of the Founder's Fee and monthly charges paid by a resident seems to us lacking in the warmth and spontaneity indicative of charitable impulse. Rather, it seems more related to the bargaining of the commercial market place. Coupled with plaintiff's stringent health requirements it is certainly sufficiently restrictive to prevent our saying that the property is used for the benefit of an indefinite number of people and that no obstacles are placed in the way of aged persons needing and seeking the benefits plaintiff provides.

We agree with plaintiff that charging fees and dispensing benefits to persons who are not necessarily poverty stricken would not destroy its charitable character. (*People* v. *Y.M.C.A.,* 365 Ill. 118; *Sisters of Third Order of St. Francis* v. *Board of Review,* 231 Ill. 317.) However, while the hospital operated by the Sisters of St. Francis and the Y.M.C.A. hotel did charge for their accommodations in accordance with location and desirability, both admitted all who applied without prior screening as to health and ability to pay and without the approval of an admission committee based on such screening. Nor did they require any payment to the general funds of the institution over and above their regular charges. Also, insofar as the hospital was concerned, many persons who could not and did not pay anything were

admitted without question. Furthermore, the property they used was provided, in main, by gifts, bequests and donation, rather than from the proceeds of any lump sum payment such as a Founder's Fee. In this respect they did meet our requirements of serving an indefinite number of people, placing no obstacles in their way, and complying generally with their charitable purposes.

Plaintiff contends that in providing its services as it does, it is satisfying the requirement of relieving the State of the burden of supporting such people. However, there is nothing in their bylaws or contractual application with their residents to compel them legally to maintain such people if they become sick or unmanageable and, in fact, they reserve the right to discharge such people and return them to their families or place them in some other institution. A resident may well have dissipated all his worldly assets in the payment of the required Founder's Fee and then be returned to the State's care for maintenance during his declining years when his expenses are greatest, and since plaintiff would not be obligated to return the Founder's Fee or any portion of it, the State would be bereft of any asset or estate from which it might seek reimbursement for its outlay after the person's demise. We can only infer that plaintiff's use of its property in this respect could tend to increase, rather than lessen, the State's burden.

Both plaintiff and defendants cite decisions of courts of other States for and against granting tax exemption in situations similar to that before us. The numerous decisions of this court cited by both plaintiff and defendants in their briefs referred to in this opinion provide us with ample background for deciding the issue presented and we see no reason for relying on decisions from other jurisdictions based on a different statutory and constitutional foundation.

We hold that the plaintiff's property is not held exclusively for charitable purposes within the meaning of our

constitution and is not entitled to exemption from tax. The judgment of the trial court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.