NOTICE

Decision filed 03/31/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0724

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THREE ANGELS BROADCASTING NETWORK, INC., | ) ) ) | Appeal from the Circuit Court of Franklin County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04-MR-15 |
| THE DEPARTMENT OF REVENUE, | ) ) | |
| Defendant-Appellee | ) ) | |
| (Thompsonville Community High School District No. 112 and Thompsonville School District No. 62, Intervenors in the Administrative Proceedings, and Franklin County Board of Review, Intervenors in the Circuit Court Proceedings, Appellees). | ) ) ) ) ) ) | Honorable E. Kyle Vantrease, Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The plaintiff, Three Angels Broadcasting Network, Inc. (TABN), appeals the decision of the Illinois Department of Revenue (the Department) to deny its application for a property tax exemption pursuant to sections 15-40 and 15-65 of the Illinois Property Tax Code (the Code) (35 ILCS 200/15-40, 15-65 (West 2000)). TABN claims that the Department erred, *inter alia*, in the following respects: (1) it found that TABN failed to prove that its property was used exclusively for a religious purpose, without a view to profit, (2) it found that TABN failed to prove that its property was used exclusively for charitable or beneficent purposes, without a view to profit, and (3) the administrative law judge (ALJ) refused to consider certain items of evidence offered by TABN at the hearing on its application for a property tax exemption. Intervenor Franklin County Board of Review (the Board) raises TABN's failure to name the Board as a defendant in the proceedings before the circuit court

1

as an additional reason to affirm the decision of the Department. For the reasons that follow, we affirm the decision of the Department.

FACTS

TABN operates a television and radio station that features an array of programming, including devotional and inspirational shows, as well as programming devoted to music, cooking, exercise, and a healthy lifestyle, all of which are consistent with the principles of the Seventh-Day Adventist Church (Adventist). In 2000 and 2001, TABN filed applications for a religious-use property tax exemption with the Department. The property at issue, located on a five-acre parcel of land at 3390 Charlie Good Road in Franklin County, consists of three buildings. The Board recommended denying the applications. TABN requested a hearing before the Department, and Thompsonville School Districts No. 112 and No. 62 (the school districts) were permitted to intervene in the proceedings. The 2000 and 2001 applications were consolidated for purposes of a joint administrative hearing.

Prior to the hearing, a subpoena *duces tecum* and *ad testificandum* was issued that required the president of Tri-State Christian TV (Tri-State), an organization located in Williamson County which TABN claims has the same or similar methods of operation, to appear at the hearing and produce certain documents. The subpoena ordered that Tri-State produce all documents evidencing correspondence with the Department of Revenue regarding its property tax exemption, its state and federal income tax returns for the years 1999 through 2001, and documents reflecting the content of Tri-State's programming. Thereafter, the Department and the school districts filed a motion to quash the subpoena and motions *in limine* seeking the exclusion of, *inter alia*, any evidence regarding other property tax exemption decisions made by the Department, including any decisions made regarding the exemption status of Tri-State. In addition, the motions *in limine* sought to exclude the testimony of Ted Wilson or Denis Fortin, who were to testify that the health and lifestyle

2

programming produced and aired by TABN promotes a central tenet of the Adventist faith. On September 17, 2002, the ALJ entered an order granting the motion to quash and the motions *in limine*. Although TABN appeals the ALJ's exclusion of the evidence of Tri-State's property tax exemption status, which it presented as an offer of proof at the hearing on its application for exemption, it does not appeal the order granting the motion to quash the subpoena ordering Tri-State's president to appear and produce documents.

At the hearing before the Department, which began on September 23, 2002, TABN also contended that it should be entitled to a charitable-use property tax exemption. During the hearing, Danny Shelton testified that he is the president of TABN and that he is an ordained Adventist elder but is not a minister. TABN was incorporated in 1985 or 1986 as a general not-for-profit corporation. TABN's articles of incorporation were admitted into evidence during Mr. Shelton's testimony. According to the articles of incorporation, TABN's purposes are "exclusively religious, charitable[,] or educational within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1954, as amended" (26 U.S.C. §501(c)(3) (2006)). In furtherance of these purposes, the articles of incorporation state that the corporation may engage in, *inter alia*, the following activities:

"(a) develop, plan, promote, produce[,] and direct in cooperation with various religious organizations, all types of religious programming for electronic transmission for television and radio broadcasting throughout the world.

(b) to [*sic*] buy, sell, distribute[,] and otherwise acquire or dispose of all kinds of television and radio apparatus property incidental to or connected with the purpose of this corporation.

(c) to [*sic*] develop, plan, promote, produce, direct[,] and distribute recorded music and video[-]recorded programs to further the purposes of the corporation.

(d) own or operate facilities or own other assets for the public's welfare.

3

(e) solicit support for the corporation's activities from the public generally and through a board of directors.

(f) promote, by donation, loan[,] or otherwise, the interests of any not-for-profit and federally tax-exempt organizations which are affiliated with the corporation, the purposes of which are not inconsistent with those of the corporation."

The articles of incorporation also state as follows:

"No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its members, trustees, directors, officers, or other persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth herein."

TABN's bylaws were also admitted into evidence. Section 1.4 of the bylaws sets forth the procedure to be followed upon the dissolution of TABN. This section states as follows:

"In the event of the dissolution of the corporation, the Board of Directors[,] after paying or making provision for the payment of all of the liabilities of the corporation, shall distribute, in any proportions considered prudent, all of the assets of the corporation in such manner, or to such organization or organizations organized and operated exclusively for charitable, religious, educational[,] or scientific purposes to benefit the inhabitants of the State of Illinois, and shall at the time qualify as an exempt organization or organizations under Section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law), as the Board of Directors shall determine. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which

4

are organized and operated exclusively for such purposes. Such recipient shall be an organization whose philosophy is in harmony with the principals [*sic*] and teachings of the Seventh-Day Adventist Church."

Mr. Shelton testified that from its creation, TABN has been exempt from federal income taxes and Illinois sales taxes.

Mr. Shelton went on to explain TABN's operations. According to his testimony, TABN operates a broadcasting network on the subject property that works with satellite television and radio to broadcast programs to various downlink sites around the world. TABN produces most of the programs it airs, but it also sells airtime to other organizations. Mr. Shelton explained that all of the programming produced and broadcasted by TABN communicates Adventist doctrines. Although there are programs on health-related issues, such as quitting smoking, abstaining from drugs and alcohol, and lowering cholesterol and blood pressure, according to Mr. Shelton the messages contained in this health-related programming communicate a vital tenet of the Adventist faith. TABN's signal can be received by anyone with a particular kind of satellite system or cable station. It can also be received by anyone who subscribes to Sky Angel Network, which can be obtained as a special programming package through the Dish Network satellite system. The Adventist Church has 14,000 downlink sites with the ability to receive TABN programming. TABN sells the satellite-receiving equipment necessary to receive its programming, including the Sky Angel equipment. It also sells the programs it produces, in the form of videotapes and compact discs (CDs).

During his testimony Mr. Shelton described the buildings at issue. First, TABN's main facility is the administrative production center. The administrative production center is approximately 30,000 square feet. This building houses TABN's production studios and all of its administrative offices. The production studios consist of several sets, a control

5

room, extensive production equipment, and editing bays. The administrative offices house all of the corporate officers, the financial department, the maintenance department, and a graphics and publishing department. There are also two pastoral offices on the second floor, where TABN's pastoral staff takes phone calls from people requesting prayer. About 20 feet from the back of the main building is a construction and maintenance shed, which serves as a storage facility for sets, as well as the tools and equipment needed to build the sets. The third building is a call center, where TABN employees answer calls from customers who order videos, CDs, books, and satellite equipment. The call center also serves as a storage, shipping, and receiving facility for the various items available for purchase from TABN.

Mr. Shelton explained that TABN's board of directors is made up of 12 Adventists. One position on the board of directors is reserved for the president of the Illinois Conference of Adventists. Several board members are current or former ordained Adventist pastors. The board of directors meets three to five times a year to discuss financial and auditor reports, as well as to discuss major expansion projects. In 1997, TABN and the General Conference of Adventists executed a document called "Joint Declaration of Commitment," which was admitted into evidence. The General Conference oversees the organized Adventist Church worldwide. Pursuant to the "Joint Declaration of Commitment," TABN commits itself to offer resources and work in cooperation with the Adventist Church to proclaim the gospel to the entire world. The Adventist Church commits itself to establish official communication with and support TABN and to encourage its departments, divisions, and institutions to utilize the services of TABN for the production and distribution of programming.

According to Mr. Shelton, most of TABN's programming is conducted by members of the Adventist Church. Mr. Shelton and his wife, Linda Shelton, travel extensively to Russia, New Guinea, and the Philippines to sing and preach at churches and auditoriums. In order for them to do this, TABN purchased a private jet for them to use in their travels.

6

The Sheltons also produce music CDs that are sold by TABN. The Sheltons do not receive royalties from the CDs sold by TABN. TABN pays Mr. Shelton an annual salary of approximately $50,000, as well as medical and dental benefits and a company vehicle. TABN pays Linda Shelton, who is the vice president of TABN, an annual salary of $45,000, plus medical and dental benefits.

During his testimony, Mr. Shelton also discussed a couple of projects that TABN undertook in conjunction with the Adventist Church. In 2000, TABN participated in a program called "Pentecost 2000" where an Adventist pastor preached in the auditorium from the subject property and TABN broadcasted the sermon to Adventist churches around the world at no cost to the Adventist churches. TABN also helped the Adventist Church to broadcast its general conference session around the world and worked with church institutions on various overseas projects.

TABN's financial statements for 2000 and 2001 were admitted into evidence. These financial statements constitute the only evidence TABN provided regarding the amount and sources of the income generated by TABN's activities on the subject property. TABN generated more than $14 million in revenue in 2000. Approximately $11 million was generated from "contributions." In 2000, TABN's use of the subject property generated approximately $604,000 in "airtime and productions fees," $3 million in "Sky Angel equipment sales," and $146,000 in "video sales." TABN's total expenses amounted to more than $13 million, resulting in an increase in net assets of more than $1 million.

With regard to the breakdown of expenses for 2000, the financial statement reflects that TABN expended almost $2 million for "airtime." However, the financial statement does not show what portion of that amount can be attributed to the airtime sold to other organizations and what portion of that amount can be attributed to the airtime occupied by TABN's own programming. Similarly, the financial statement for 2000 reflects that TABN

7

expended almost $3 million in "Sky Angel purchases." However, there is no indication of how many of the Sky Angel units that TABN purchased in 2000 were actually sold in 2000 and how many remained in TABN's inventory for future sales. In addition, there is no indication, based on the financial statement for 2000, regarding the amount of expense incurred by TABN to produce the video and audio recordings sold by TABN.

The information contained in the financial statement for 2001 contains a breakdown of TABN's revenue and expenses that is almost identical to that contained in the financial statement for 2000. TABN generated almost $14 million in revenue in 2001. Approximately $11 million was generated from "contributions," $858,000 from "airtime and production fees," $619,000 from "satellite sales," and $251,109.82 from "video and other sales." TABN's expenses totaled almost $12 million, resulting in an increase in net assets of almost $2 million. Again, although the 2001 financial statement shows expenses for "airtime" and "satellite purchases," there is no way to determine what portion of these expenses can be attributed to the revenue generated from the sale of airtime and equipment in 2001. In addition, there is no indication, based on the financial statement for 2001, regarding the amount of expense incurred by TABN to produce the video and audio recordings sold by TABN that year.

Mr. Shelton testified that TABN sometimes gives away, or sells at a reduced price, airtime, equipment, and media. However, the order forms for each type of media and the satellite equipment, which were admitted into evidence, contain no place where a reduced price or giveaway would be indicated. In addition, there is no official policy for determining a customer's eligibility for free or reduced-cost items. Mr. Shelton decides whether to give an item away for free or at a reduced price. According to Mr. Shelton's memory, TABN gave away approximately six satellite systems in 2000 and about the same number in 2001. Sometimes, pamphlets and books are given away for free. However, no records were

admitted into evidence regarding the amount of time TABN's facilities were used to print giveaway literature.

TABN's sales catalog was also admitted into evidence. Episodes of TABN's programs are available for sale at a price of $22 per 120-minute episode. The sales catalog is extensive and contains hundreds of programs, which have various prices. There are several parenting programs, as well as health and lifestyle programs, for sale. In addition, there is a host of CDs and books for sale at various prices. No evidence was introduced regarding how the prices of TABN's products are determined.

Larry Ewing testified that he has been the director of finance for TABN since January 2002. The ALJ only allowed Mr. Ewing to testify regarding the year 2001, because he prepared the documentation to be submitted to the auditor for that year but was not involved in the preparation of the audit for 2000. Mr. Ewing testified that, in his opinion, TABN operated consistently with a not-for-profit corporation, with no personal profit benefit inuring to a private individual.

Alan Lovejoy testified that he conducted an audit of TABN's finances in 2001 and 2002. Mr. Lovejoy testified that based on his audit, TABN operated at a loss on sales both years. However, on cross-examination, Mr. Lovejoy testified that his audit does not break down the direct expenses that are related to a line item of revenue. He also gave his opinion that there were no items in TABN's operations that are inconsistent with its not-for-profit status. However, as of 2001, TABN had accumulated $42,350,373.94 in total assets, real estate included, although about $16 million of those assets was tied up in "revocable" trusts.

Dr. Walter Thompson testified that he is the chairman of the board for TABN. He is a member of the Adventist Church and a physician. He receives no compensation or travel reimbursement. He is responsible for TABN's health programming. Billy Bishop testified that he is on the pastoral staff at TABN. He is a licensed Adventist minister. There are four

9

pastoral staff members whose duties include answering the phones for prayer calls and viewing recordings for content. In addition, they conduct 15-minute, private worship services on the premises once or twice a week.

Kenneth Denslow testified that he is the president of the Illinois Conference of the Adventist Church and a credentialed, ordained minister. He was on the board of TABN in 2000. He testified that the Adventist Church did pay the costs incurred by TABN to produce and broadcast the "Pentecost 2000" program to TABN, although TABN did not charge an additional fee for the use of its facilities and equipment.

Mollie Steenson testified that she is the department coordinator for TABN. She coordinates the activities of TABN between the call center, marketing, pastoral, construction, accounting, and master control departments. She leads an in-house morning worship service daily and has a 15-minute scripture reading program on TABN. She testified that the TABN videos are not copyrighted and copying is encouraged. The employees at the call center are not authorized to provide materials to customers for free or at a reduced cost. If a caller requests an item for free or at a reduced cost, she screens the request and determines if it seems to be a "worthy" request and then takes the request to Danny Shelton, who has the ultimate authority to determine whether to grant the request. Mrs. Steenson could not testify regarding how many of these requests were made and/or granted in 2000 and 2001.

Linda Shelton testified that she is the vice president of TABN. She oversees production, programming, scheduling, and printing. She also writes TABN's newsletters and promotional magazines. These go out to a mailing list of 100,000 to 150,000 people and include miracle stories, testimonies, and devotional thoughts. These materials are free but also contain advertisements for satellite equipment and other products, as well as order forms. She also sings on four CDs that were produced at TABN and are sold by TABN. She does not receive royalties from TABN, but her songs are licensed through a company called

10

BMI, which pays her royalties for airplay. The largest royalty check she has received was in the amount of $20.

Following Linda Shelton's testimony, TABN presented offers of proof to the ALJ regarding the testimony of Ted Wilson and Denis Fortin, which was excluded by virtue of the ALJ's rulings on the motions *in limine* that had been filed jointly by the Department and the school districts. Ted Wilson is the vice president of the General Conference of Adventists. He would have testified that all of TABN's programming is of a religious character and that TABN's operations are substantially similar to Adventist mass communication activities. Denis Fortin is a doctor of theology and professor at the Adventist Theological Seminary at Andrews University. He would have testified that health and temperance issues are part and parcel of the Adventist message and ministry.

TABN also presented an offer of proof regarding evidence it wished to introduce regarding the Department's treatment of Tri-State as exempt from property taxes, which was also excluded by virtue of the ALJ's rulings on the motions *in limine*. TABN's offer of proof on this issue consisted of several documentary exhibits. These consisted of Department records showing that Tri-State was granted a property tax exemption effective in 1996. The exhibits show that the Department made this determination after the Williamson County Board of Review declined to make a recommendation and requested that the Department conduct an expert evaluation and determine whether to grant the exemption. An affidavit of use filed by Tri-State in conjunction with its application for exemption states as follows: "[The property for which the exemption was granted] is used as corporate offices and day[-]to[-]day operations of Tri-State Christian TV, Inc. It will handle all corporate personnel and the operations of all stations in the Tri-State network." Records from the Williamson County treasurer show that Tri-State continued to be exempt from property taxes through 2002.

TABN's offer of proof also included the affidavit of Danny Shelton, who averred that he visited Tri-State in 1983 and thereafter and has watched telecasts originating from its studios between 1983 and 2001. According to Mr. Shelton's affidavit, Tri-State's programming, as well as its method of producing and airing telecasts, is identical to that of TABN. Tri-State's programming, like that of TABN, includes gospel music, health and nutrition recordings, marriage and family programs, sermons, live interviews, and call-in programs. Mr. Shelton also stated in the affidavit, "[T]he only apparent major distinction between Tri-State and TABN is that Tri-State aspires to sell books, CDs, tapes, and health-related formulas by infomercial-type programs with the interviews of individuals urging the purchase of the selected merchandise, the display of the station's ordering telephone number, and display of credit cards accepted."

The school districts called only one witness, Cynthia Humm, who is the supervisor of assessments in Franklin County. Ms. Humm testified that prior to 2000, the subject property had been assessed as vacant ground. According to her records, the subject property was assessed in 2000 due to new construction, although she admitted that there had been buildings on the property many years prior to 2000. She opined that the property must have been "missed" by the township assessor prior to 2000.

On January 28, 2004, the ALJ entered a 46-page recommendation, which detailed her findings of fact and conclusions of law. The ALJ concluded that the vast majority of the property at issue did not qualify for a religious-use or charitable-use property tax exemption. The ALJ recommended that the subject property remain on the tax rolls for the 2000 and 2001 assessment years, except for the two pastoral offices located on the second floor of the administrative production center building and a corresponding amount of land. The ALJ recommended that area be granted a property tax exemption based on its use for religious purposes without a view to profit. Subsequently, the ALJ denied TABN's motion to

12

reconsider. On April 7, 2004, the Department issued a notice of decision that adopted the ALJ's recommendation.

On May 11, 2004, TABN filed a complaint for administrative review in the circuit court of Franklin County, naming the Department and the school districts as defendants. The Board filed a special and limited appearance and a motion to dismiss the complaint for a lack of jurisdiction because TABN failed to name the Board as a defendant. The other defendants joined in the Board's motion. After briefing by all the parties, the circuit court entered an order on August 20, 2004, denying the motion to dismiss. The Board subsequently filed a motion for the entry of an order pursuant to Illinois Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)) and an alternative motion for leave to intervene pursuant to section 2-408 of the Illinois Code of Civil Procedure (735 ILCS 5/2-408 (West 2004)). The circuit court denied the motion for a finding pursuant to Rule 308(a) but granted the alternative motion for leave to intervene. As an intervenor, the Board was permitted to participate in all the proceedings before the circuit court and before this court.

On March 8, 2005, TABN filed its brief in support of its complaint for administrative review in the circuit court. In the "Statement of the Case" section of its brief in the circuit court, TABN discussed the ALJ's exclusion of the testimony of Ted Wilson and Denis Fortin, as well as the exclusion of the evidence of Tri-State's exemption status. With regard to the exclusion of evidence regarding Tri-State's exemption status, TABN argued that the case relied on by the ALJ to support her ruling was inapposite. However, the argument section of TABN's brief in the trial court contained no discussion of the legal sufficiency of the constitutional challenges TABN had intended to make before the Department had the evidence been allowed.

After all the parties submitted written briefs, the circuit court entered its order on November 29, 2005. After noting that the parties agreed that the case involves a mixed

13

question of law and fact, the circuit court concluded that the Department's decision was not clearly erroneous. Further, the circuit court found that the testimony of Ted Wilson and Denis Fortin was properly excluded as irrelevant. Finally, the circuit court found that although TABN argued that the evidence regarding Tri-State's exemption status should have been admitted as relevant to a constitutional claim, TABN failed to cite any authority in support of that claim. Accordingly, the circuit court affirmed the decision of the Department. On December 21, 2005, TABN filed a timely notice of appeal.

ANALYSIS

1. Joinder

As a preliminary matter, we note that the Board argues on appeal that the circuit court lacked subject matter jurisdiction over TABN's complaint for administrative review because TABN failed to comply with the joinder provision of the Administrative Review Law (Review Law) (735 ILCS 5/3-107(a) (West 2004)) and that the Department's decision should be affirmed on that basis. Because this is a purely legal issue, our standard of review is *de novo*. See *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees of St. Clair County*, 218 Ill. 2d 175, 181 (2006). Section 3-107(a) of the Review Law provides, in relevant part, as follows:

"[I]n any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." 735 ILCS 5/3-107(a) (West 2004).

Although not jurisdictional, the joinder requirements of the Review Law are mandatory, and the failure to comply with those requirements mandates a dismissal of the review proceeding. *Collinsville Community Unit School District No. 10*, 218 Ill. 2d at 183. We have previously interpreted the joinder provision and found as follows:

14

"[T]he plain language of this section \*\*\* makes clear that the terms 'administrative agency' and 'parties of record' are not coterminous. Accordingly, both the administrative agency that rendered the decision sought to be reviewed and the parties of record to the proceedings before that administrative agency must be named as defendants in an administrative review action." *Jones v. Cahokia Unit School District No. 187*, 363 Ill. App. 3d 939, 942 (2006).

Here, the Department is the administrative agency that rendered the decision sought to be reviewed. It is the Department that finally determines "whether the property is legally liable to taxation." 35 ILCS 200/16-70 (West 2000). Accordingly, the Board was only required to be joined as a defendant if it was a party of record to the proceedings before the Department. However, we need not determine whether the Board was, in fact, a party of record to the proceedings before the Department. This is because section 3-107(a) of the Review Law further provides as follows:

"If, during the course of a review action, the court determines that a party of record to the administrative proceedings was not made a defendant as required by the preceding paragraph, and only if that party was not named by the administrative agency in its final order as a party of record, then the court shall grant the plaintiff 21 days from the date of the determination in which to name and serve the unnamed party as a defendant. The court shall permit the newly served defendant to participate in the proceedings to the extent the interests of justice may require." 735 ILCS 5/3-107(a) (West 2004).

We find persuasive our colleagues' conclusion in *Villa Retirement Apartments, Inc. v. Property Tax Appeal Board*, 302 Ill. App. 3d 745, 751-52 (1999), that "the only way to give effect to the language of section[] 3-107(a) \*\*\* of the [Review Law] is to give an appellant the opportunity to name and serve an absent party of record unless the final order

15

*explicitly* states that the party is a party of record." (Emphasis added.) Here, the Department's order contains no such explicit statement. The only reference to the Board is contained in the ALJ's recommendation, which is adopted by the Department in its final order and attached thereto. The reference to the Board is contained in the section entitled "Findings of Fact," which states, "The Board of Review of Franklin County recommended denying the requests." Accordingly, irrespective of whether or not the Board was actually a party of record to the proceedings before the administrative agency, TABN would be entitled to amend its complaint to name the Board as a defendant. Because TABN was entitled to amend its complaint to name and serve the Board and the Board was permitted to participate in the proceedings as an intervenor in the circuit court, this appeal will not be dismissed for TABN's failure to name the Board as a defendant. See *Villa Retirement Apartments, Inc.*, 302 Ill. App. 3d at 752.

## 2. Property Tax Exemption

### *a. Standard of Review*

TABN argues that the Department erred when it denied its application for a property tax exemption pursuant to sections 15-40 and 15-65 of the Code (35 ILCS 200/15-40, 15-65 (West 2000)) for the years 2000 and 2001. Before reaching the merits of TABN's arguments, we must determine the appropriate standard of review. "On appeal from the circuit court's order affirming a final administrative decision, this court reviews the administrative agency's decision and not the circuit court's determination." *Calvary Baptist Church of Tilton v. Department of Revenue*, 349 Ill. App. 3d 325, 330 (2004). The Code provides that judicial review of the Department's decisions be in accordance with the Review Law. 35 ILCS 200/8-40 (West 2006).

Pursuant to the Review Law, judicial review of an agency decision "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-

16

110 (West 2006). The amount of deference given to the agency on review depends on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142 (2006). "Where resolution of the case requires determining the legal effect of a given set of facts, the agency's determination should be affirmed unless clearly erroneous." *Calvary Baptist Church of Tilton*, 349 Ill. App. 3d at 330. Here, like in *Calvary Baptist Church of Tilton*, TABN claims that certain uses of the property at issue are exempt from taxation and the Department disagrees. 349 Ill. App. 3d at 330. However, the determinative facts, *i.e.*, the actual uses to which the subject property was put, are not in dispute. See *Calvary Baptist Church of Tilton*, 349 Ill. App. 3d at 330. In fact, the only evidence regarding the use of the property was presented by TABN. The Department put on no evidence to refute that presented by TABN. The issue is whether, given the undisputed facts presented, TABN is entitled to a religious-use or charitable-use property tax exemption. See *Calvary Baptist Church of Tilton*, 349 Ill. App. 3d at 330. Accordingly, we will only reverse the decision of the Department to deny the exemptions if that decision was clearly erroneous.

When reviewing an agency's conclusion on a mixed question of law and fact for clear error, we give significant deference to the "agency's experience in construing and applying the statutes that it administers." *Elementary School District 159*, 221 Ill. 2d at 143. An agency's decision will be deemed clearly erroneous " ' "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " ' " *Elementary School District 159*, 221 Ill. 2d at 143 (quoting *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 472 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948)))).

17

Generally, article IX of the 1970 Illinois Constitution subjects all real property to taxation. Ill. Const. 1970, art. IX; *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 285 (2004).

"Section 6 of article IX of the 1970 Illinois Constitution permits the legislature to exempt certain property from taxation:

'The General Assembly by law may exempt from taxation only the property of the State, units of local government[,] and school districts and property used exclusively for agricultural and horticultural societies[] and for school, religious, cemetery[,] and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits.' " *Eden Retirement Center, Inc.*, 213 Ill. 2d at 285-86 (quoting Ill. Const. 1970, art. IX, §6).

The Illinois Supreme Court has held as follows:

"Since the terms of article IX of the constitution subject all property generally to taxation, the courts have strictly construed statutes granting tax exemptions and have insisted that they keep clearly within the boundaries set forth in the constitution. [Citations.] The burden of proving the right to exemption is upon the party seeking it, and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. [Citations.] Plaintiffs must show that its organization and the use of its property came within the provisions of the statute and the constitution." *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 155 (1968).

### b. Religious-Use Property Tax Exemption

We now turn to TABN's argument that the Department erred in denying its application for a religious-use property tax exemption. Section 15-40(a)(1) of the Code (35 ILCS 200/15-40(a)(1) (West Supp. 2001)) provides, "Property used exclusively for *** religious

18

purposes \*\*\* qualifies for exemption as long as it is not used with a view to profit." " '[P]roperty satisfies the exclusive-use requirement of the property tax exemption statutes if it is *primarily* used for the exempted purpose \*\*\*.' " (Emphasis in original.) *Calvary Baptist Church of Tilton*, 349 Ill. App. 3d at 331 (quoting *McKenzie v. Johnson*, 98 Ill. 2d 87, 98 (1983)). The Illinois Supreme Court made its seminal pronouncement of what constitutes the religious use of property for tax exemption purposes in *People ex rel. McCullough v. Deutsche Evangelisch Lutherische Jehovah Gemeinde Ungeaenderter Augsburgischer Confession*, 249 Ill. 132, 136-37 (1911), when it stated as follows:

"While religion, in its broadest sense, includes all forms and phases of belief in the existence of superior beings capable of exercising power over the human race, yet in the common understanding and in its application to the people of this State it means the formal recognition of God as members of societies and associations. *As applied to the uses of property, a religious purpose means a use of such property by a religious society or body of persons as a stated place for public worship, Sunday schools*[,] *and religious instruction*." (Emphasis added.)

Several years later, in *People ex rel. Carson v. Muldoon*, 306 Ill. 234, 238 (1922), the Illinois Supreme Court explained that its pronouncement in *McCullough* "was not stated as inclusive of everything that might in the future be regarded as a use for religious purposes but as illustrative of the nature of such use." In the case at bar, the Department determined that TABN is not a "religious society or body of persons" but is rather an "organization of lay persons that is not part of the Adventist Church." The Department also found that most of the subject property is not "a stated place for worship, Sunday School, or religious instruction."

The parties refer us to *Scripture Press Foundation v. Annunzio*, 414 Ill. 339 (1953), as relevant to our analysis of whether the Department erred in determining that TABN's use

19

of the subject property is not exclusively religious within the meaning of section 15-40 of the Code. In *Scripture Press Foundation*, the Illinois Supreme Court was called upon to decide whether an organization that published and distributed religious literature, Sunday school supplies, and miscellaneous merchandise used by Sunday schools and churches was exempt from coverage under the Unemployment Compensation Act. *Scripture Press Foundation*, 414 Ill. at 341-42. Under the terms of that statute, services performed in the employ of an organization that was organized and operated for a religious purpose, no part of the net earnings of which inured to the benefit of any private shareholder or individual, were exempt from the definition of "employment." *Scripture Press Foundation*, 414 Ill. at 341. The Illinois Supreme Court determined that producing, distributing, and selling religious literature and supplies to religious organizations are secular activities and are not exclusively religious, "the same as any other commercial service organization furnishing to a religious institution necessary services such as fuel, lights, building material[,] or any other item necessary to its ordinary and customary functioning." *Scripture Press Foundation*, 414 Ill. at 356. Our colleagues in the Second District have applied *Scripture Press Foundation* when determining whether or not publishers and distributors of religious literature and supplies were operated exclusively for religious purposes under section 15-40 of the Code. *Inter-Varsity Christian Fellowship of the United States v. Hoffman*, 62 Ill. App. 3d 798 (1978); *Evangelical Teacher Training Ass'n v. Novak*, 118 Ill. App. 3d 21 (1983); *Cook Communications Ministries v. Department of Revenue*, 345 Ill. App. 3d 753 (2004).

We find *Scripture Press Foundation* and its progeny distinguishable from the case at bar. TABN's primary use of the subject property is different from the operations of the organizations at issue in those cases. Here, TABN broadcasts and records what it characterizes as live religious services and instruction to viewers around the world. In making the inquiry into the use of a particular property, the court must conform to the

20

provisions set forth in the first amendment of the United States Constitution (U.S. Const., amend. I) and section 3 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §3), which provide that governmental bodies are precluded from resolving disputes on the basis of religious doctrine and must respect the internal autonomy of religious organizations. *Fairview Haven v. Department of Revenue*, 153 Ill. App. 3d 763, 772-73 (1987). Only after accepting the organization's characterization of the purpose of its activities as religious may the court determine whether the property is in fact exclusively used for religious purposes, and not with a view to profit. *Fairview Haven*, 153 Ill. App. 3d at 773.

Under the terms of *Fairview Haven*, we must accept TABN's characterization of its programming as religious instruction, in order to avoid running afoul of the first amendment of the United States Constitution (U.S. Const., amend. I) and section 3 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, §3). 153 Ill. App. 3d at 772-73. In light of this characterization, and in light of today's technology, we find that whether the production, broadcasting, and recording of religious services and religious instruction programming fall within the purview of the "illustrative" definition of "religious purpose" set forth by the Illinois Supreme Court in *McCullough* is a close question. However, for the reasons set forth below, we find it unnecessary to make this determination.

Under the plain language of the religious-use property tax exemption statute, in order to meet its burden to prove that it is entitled to a religious-use property tax exemption, TABN needed to introduce evidence that its primary activities on the subject property, in addition to being "religious," were conducted without "a view to profit." 35 ILCS 200/15-40 (West 2000). We find that TABN failed to meet its burden to prove that its activities on the subject property were so conducted. Assuming, without deciding, that TABN's purposes were exclusively religious, these purposes were carried out primarily by the production of programming and the sale of airtime to other organizations. TABN's programming was

21

received by viewers via satellite equipment and video and audio recordings that were produced, stored, and sold by TABN using the subject property. The selling of airtime and video and audio recordings is an activity which has a propensity to be conducted with a view to profit, irrespective of whether the programming that is sold is exclusively religious.

We recognize that it is possible for an organization to make use of its property to provide a product or service without a view to profit. However, TABN did not meet its burden to show that its products and services were sold in this manner. At the very least, TABN needed to put on evidence regarding how the prices of its airtime, equipment, and media were determined. Although TABN established the prices of the products and services produced, stored, and sold on the subject property, TABN introduced no evidence of the specific costs associated with providing those products and services or its method of determining the prices. The financial statements introduced into evidence did not break down expenses so that this determination could be made. Although Mr. Lovejoy testified that, based on his audit, TABN operated at a loss on sales both years, on cross-examination, Mr. Lovejoy admitted that his audit does not break down the direct expenses that are related to a line item of revenue, and thus he did not provide a sufficient basis for his opinion. We reiterate the well-recognized rule that the burden of proving the right to an exemption by clear and convincing evidence is upon the party seeking it. *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 155 (1968). In addition, when determining whether property is within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *Methodist Old Peoples Home*, 39 Ill. 2d at 155.

While TABN presented evidence of missionary activities that it conducts throughout the world, as well as some occasional, special programs it conducted in conjunction with the Adventist Church, we find these factors irrelevant to the determination of whether TABN's primary activities on the subject property were conducted with a view to profit. It is the

22

primary use of the subject property, and not TABN's activities in other locations or its uses on special occasions, that must be evaluated to determine whether there is a view to profit. In addition, the facts that it has no stock and that any profits are not distributed to any individual should not factor into the analysis. As the Illinois Supreme Court explained in *People ex rel. Baldwin v. Jessamine Withers Home*, 312 Ill. 136, 141 (1924), "When money is made by the use of [a] building, that is profit, no matter to what purpose that money is applied."

Based on the foregoing Illinois Supreme Court precedent, we find that the fact that property is used with a view to profit defeats a religious-use property tax exemption regardless of whether that profit inures to a private individual or is applied to maintaining the religious organization. See *Baldwin*, 312 Ill. at 139-40. It is whether the activities are conducted with a view to profit, and not how the profits are used, that determines whether there should be an exemption. See also *People ex rel. Lloyd v. University of Illinois*, 357 Ill. 369, 377 (1934). Because TABN failed to prove, by clear and convincing evidence, that it operated the subject property without a view to profit, the Department's denial of a religious-use tax exemption in 2000 and 2001 was not clearly erroneous.

*c. Charitable-Use Property Tax Exemption*

TABN also argues that the Department erred when it denied TABN's application for a charitable-use exemption. Section 15-65 of the Code provides in pertinent part as follows:

"Charitable purposes. All property of the following is exempt when actually and exclusively used for charitable or beneficent purposes, and not leased or otherwise used with a view to profit:

(a) Institutions of public charity." 35 ILCS 200/15-65(a) (West 2000).

In *Methodist Old Peoples Home*, 39 Ill. 2d at 156-57, the Illinois Supreme Court set forth the following definition of a charitable institution:

23

"It has been stated that *** the distinctive characteristics of a charitable institution are that it has no capital, capital stock[,] or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter [citations]; [and] that a charitable and beneficent institution is one which dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses [citation] ***." (Emphasis omitted.)

Furthermore, the supreme court explained, "[T]he statements of the agents of an institution and the wording of its governing legal documents evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used [citations] ***." *Methodist Old Peoples Home*, 39 Ill. 2d at 157. When we apply these characteristics to the case at bar, it is clear that the Department's decision to deny TABN a charitable-use exemption for the subject property was not clearly erroneous. In addition to TABN's failure to prove that its activities on the subject property were not conducted without a view to profit, it is abundantly clear from the record that the primary use of TABN's property is not to dispense charity to all who need and apply for it. Danny Shelton testified that although TABN gave away some of its products and airtime for free or at a reduced cost in 2000 and 2001, TABN had no policy allowing for this and did not make known to the public any application process for free or reduced-priced products or services. All of TABN's sales catalogs and order forms suggested that payment was required for all of the products produced on the subject property. On the order forms that were admitted into evidence, there is no place to apply for a free or reduced-priced product. In our view, this factor alone provides a sufficient basis

24

to uphold the Department's decision to deny a charitable-use property tax exemption.

### 3. Evidentiary Issues

#### *a. Standard of Review*

Finally, TABN argues that the Department committed reversible error when it excluded certain items of evidence from the administrative hearing on TABN's application for property tax exemptions. We begin our analysis of this argument with a discussion regarding the standard of review. "Agencies have broad discretion in conducting administrative hearings." *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 907 (2003). "An administrative agency's decision regarding the conduct of its hearing and the introduction of evidence is properly governed by an abuse of discretion standard and subject to reversal only if there is demonstrable prejudice to the party." *Wilson*, 344 Ill. App. 3d at 907.

#### *b. Evidence of Tri-State's Property Tax Exemption Status*

TABN claims that the ALJ committed reversible error when she excluded evidence of Tri-State's property tax exemption status. Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)) provides that the appellant's brief shall contain the contentions of the appellant and the reasons therefor, with citations of authorities. See *Village of Riverwoods v. BG Limited Partnership*, 276 Ill. App. 3d 720, 729 (1995). In addition, arguments not raised in a party's opening brief may not be raised in its reply brief or at oral argument. *Stephens v. Industrial Comm'n*, 284 Ill. App. 3d 269, 276 (1996). There is a reason for these rules: "A reviewing court is entitled to have the issues before it clearly defined and is not simply a repository in which appellants may dump the burden of argument and research; an appellant's failure to properly present his own arguments can amount to waiver of those claims on appeal." *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005).

On the issue of the exclusion of evidence of Tri-State's exemption status, TABN's

opening brief includes a statement that TABN "preserved this issue in its brief to the trial court, and TABN adopts that argument for presentation to this Court." In its brief to the trial court, TABN argues that evidence regarding Tri-State's exemption status should have been allowed to show "that it was treated differently than a similarly situated organization in violation of the religious freedom and equal protection guarantees of the Illinois and U.S. Constitution that prohibits discrimination based on religious grounds." However, TABN cites no authority in its brief to support its claim that the admission of the evidence would have proven the constitutional violation that TABN claims. Accordingly, we find that TABN forfeited this issue for purposes of this appeal.

Forfeiture aside, we find no demonstrable prejudice to TABN that can be attributed to the exclusion of the evidence contained in TABN's offer of proof on Tri-State's tax exemption status. As stated above, the Department's decision to deny a religious-use property tax exemption to TABN is not clearly erroneous because, even assuming that its property was used exclusively for religious purposes, TABN did not prove that its property was used without a view to profit because it introduced no evidence regarding how the pricing of its products and services is determined. Accordingly, the admission of evidence of Tri-State's exemption status would not change the outcome of this proceeding for TABN.

### c. Testimony of Ted Wilson and Denis Fortin

We now turn to the ALJ's exclusion of the testimony of Ted Wilson and Denis Fortin. The purpose of this testimony was to explain that all of TABN's programming is designed to advance the Adventist doctrine and that the Adventist doctrine and religious teaching regarding health and lifestyle standards are advanced by TABN's health, nutrition, and other lifestyle programming. The ALJ excluded this testimony because she found that neither witness had actual knowledge of TABN's use of the subject property. The ALJ further found that the authenticity of the Adventist theological teaching and religious activity was not at

26

issue.

We cannot say that the ALJ abused her discretion in excluding this testimony, nor can we say that the exclusion of the testimony resulted in demonstrable prejudice to TABN. As we explained in our analysis of the Department's denial of the religious-use exemption, when determining whether or not to grant a religious-use property tax exemption, the Department was required to accept TABN's characterization of the purpose of its activities as religious. *Fairview Haven*, 153 Ill. App. 3d at 773. Accordingly, testimony bolstering TABN's assertion that the purposes of its programming, including its health, nutritional, and lifestyle programming, were to promote the Adventist religion was irrelevant to the analysis. Although the Department's decision does contain a statement that suggests that the Department did not accept TABN's characterization of physical and spiritual health as a central tenet of the Adventist faith, we have affirmed the decision of the Department based on a finding that TABN failed to prove that the activities on the subject property were conducted without a view to profit. Accordingly, the ALJ's exclusion of the testimony was not an abuse of discretion and did not result in prejudice to TABN.

CONCLUSION

For the foregoing reasons, we will not dismiss this appeal for TABN's failure to name the Board as a defendant in the circuit court proceedings. The Department did not err when it refused to grant TABN a religious-use or charitable-use property tax exemption. The ALJ did not commit reversible error when she refused to admit evidence of Tri-State's property tax exemption status or the testimony of Ted Wilson and Denis Fortin. Accordingly, the decision of the Department is affirmed.

Affirmed.

27

GOLDENHERSH and DONOVAN, JJ., concur.

NO. 5-05-0724
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| THREE ANGELS BROADCASTING NETWORK, INC., | ) ) ) | Appeal from the Circuit Court of Franklin County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 04-MR-15 |
| THE DEPARTMENT OF REVENUE, | ) ) | |
| Defendant-Appellee | ) | |
| | ) | |
| (Thompsonville Community High School District No. 112 and Thompsonville School District No. 62, Intervenors in the Administrative Proceedings, and Franklin County Board of Review, Intervenors in the Circuit Court Proceedings, Appellees). | ) ) ) ) ) ) | Honorable E. Kyle Vantrease, Judge, presiding. |

**Opinion Filed**:        March 31, 2008

**Justices**:        Honorable Stephen L. Spomer, J.,

Honorable Richard P. Goldenhersh, J.,
Honorable James K. Donovan, J.,
Concur

**Attorneys for Appellant**      D. Michael Riva, 226 East Main Street, West Frankfort, IL 62896; David M. Macksey, Garrett L. Boehm, Jr., Johnson & Bell, Ltd., 33 West Monroe Street, Suite 2700, Chicago, IL 60603

**Attorneys for Appellees**      Lisa Madigan, Attorney General, State of Illinois, Gary Feinerman, Solicitor General, Richard S. Huszagh, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601 (attorneys for The Department of Revenue); Eugene J. Hanses, Jr., Heidi A. Katz, Joanne H. Petty, Robbins, Schwartz, Nicholas, Lifton, & Taylor, Ltd., 230 Regency Centre, Collinsville, IL 62234 (attorneys for Thompsonville Community High School District No. 112 and Thompsonville School District No. 62); David O. Edwards, Christopher E. Sherer, Colin M. Haley, Giffin, Winning, Cohen & Bodewes, P.C., One West Old State Capitol Plaza, Myers Building, Suite 600, Springfield, IL 62701; Thomas J. Dinn III, Franklin County State's Attorney, 411 East Main Street, Benton, IL 62812; Norbert J. Goetten, Director, Patrick Delfino, Assistant Director, State's Attorneys Appellate Prosecutor, 725 South Second Street, Springfield, IL 62701 (attorneys for Franklin County Board of Review)