COMPREHENSIVE TRAINING AND DEVELOPMENT CORPORATION, Plaintiff-Appellant, v. THE COUNTY OF JACKSON *et al.*, Defendants-Appellees.

Fifth District    No. 5—92—0345

Opinion filed April 28, 1994.

---

[1]Justice Chapman was originally assigned to this case; Justice Rarick was later substituted on the panel.

38

James B. Roberts, of SIUC Legal Clinic, of Carbondale, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of counsel), for appellees.

JUSTICE MAAG delivered the opinion of the court:

In this case, we are presented with the question of whether several vacant parcels of land owned by Comprehensive Training and Development Corporation (CTDC) are entitled to a property tax exemption due to CTDC's claimed status as a charitable organization. The Illinois Department of Revenue denied the exemption, and the circuit court upheld that decision. CTDC now appeals.

The inception of this case can be traced to a plan conceived in 1989 by CTDC to study the development potential for 18 vacant lots in Carbondale. The lots had been owed by CTDC since the 1970's.

Funding was requested from the City of Carbondale to perform the study. Although the city council authorized $2,000 in funding and prepared a contract in furtherance of that authorization, the city declined to execute the contract when it was discovered that property taxes were owed on the property.

CTDC then applied for a tax exemption for the land. The exemption was requested for the year 1989. The Jackson County Board of Review recommended to the Illinois Department of Revenue that the exemptions be denied. The exemptions were denied, and CTDC then requested an administrative hearing.

On May 2, 1990, the hearing was held. The only witness that appeared in person was Jane Hughes, the director of the Human Development Division of the City of Carbondale.

Hughes testified that an urban renewal program was started in Carbondale in 1974. As a part of that program, the city contracted with CTDC to rehabilitate residential housing. Carbondale has had other dealings with CTDC over the years, including CTDC's participa-

tion in a Federal model-cities program in 1975, and city funding for a program conducted by CTDC to train unemployed residents. This training program took place in 1977 after the model-cities program expired.

Regarding the 18 lots in question, Hughes admitted that no actual development had occurred on the property during 1989.

CTDC's articles of incorporation and corporate bylaws were admitted into evidence, and those documents identified it as a not-for-profit group formed for charitable purposes.

The affidavit of Carlson Smith was also admitted. Smith's affidavit stated that he had been the president of CTDC since 1987. In 1987, several members of the organization's board had died or lost interest. He had attempted to revitalize the organization, and it was his plan to develop the vacant land that led to the whole controversy.

Finally, the affidavit of Robert Stalls was admitted into evidence. He was director of the model-cities program in Carbondale from 1968 to 1975. Thereafter, he served as director of the Division of Human Resources for Carbondale until he retired in 1987. Stalls' affidavit, in substance, stated the following: (1) some of the goals of the model-cities program were to rehabilitate deteriorated housing, create new low- and moderate-income housing, and train disadvantaged residents; (2) he initiated the formation of CTDC as a not-for-profit corporation to work with the city to achieve these goals; (3) the property in question was purchased by the city to transfer to CTDC for development; and (4) it was understood at the time that CTDC was acting as an agent of the city and that the property would remain tax exempt until it was developed.

After considering this evidence, the administrative law judge rendered his decision. He ruled that CTDC had been a dormant organization during 1989, it had no financial resources, and it did not qualify as a charitable organization. He ruled that the parcels in question were not used for charitable purposes during 1989 and that they had remained vacant and unimproved since their acquisition in the 1970's. He recommended that the tax exemption be denied. On August 7, 1990, the Department of Revenue adopted his recommendation.

The sole issue we must decide in this appeal is whether the 18 lots in question should have been found tax exempt. The Illinois Constitution provides that all property in this State is subject to taxation unless the General Assembly by law exempts the property. However, the ability to grant such a legislative exemption is limited to "property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies,

and for school, religious, cemetery and charitable purposes." (Ill. Const. 1970, art. IX, § 6.) This limited power to grant exemption from taxation "guarantees every real property owner in this State that the burdens of real property taxation will be evenly distributed among all owners of such property." *Mckenzie v. Johnson* (1983), 98 Ill. 2d 87, 93, 456 N.E.2d 73, 76.

■ Pursuant to the constitutional grant of authority to exempt property from taxation, the legislature enacted section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120, par. 500.7 (now 35 ILCS 205/19.7 (West 1992))) dealing with charitable institutions. This statute grants a tax-exempt status to property owned by charitable institutions if the property is "actually and exclusively used for such charitable or beneficent purposes." Ill. Rev. Stat. 1991, ch. 120, par. 500.7 (now 35 ILCS 205/19.7 (West 1992)).

CTDC claims that because it was formed for a public and charitable purpose and because it has neither derived income from the property nor acted inconsistent with its stated charitable purpose, the property should have been found tax exempt. We disagree.

Statutes exempting property from taxation are to be strictly construed in favor of taxation (*Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1074), and the burden of proving tax-exempt status is on the party claiming it. *Thermos v. Department of Revenue* (1976), 37 Ill. App. 3d 410, 414, 346 N.E.2d 47, 50.

The administrative law judge specifically found that CTDC had been dormant, inactive, and without resources from the late 1970's until 1989. CTDC has not disputed this finding. Rather, it claims that charitable organizations may hold property solely for the purpose of future development and that this constitutes a tax-exempt use. The *Harrisburg-Raleigh* case is cited in support of this argument. We disagree that *Harrisburg-Raleigh* stands for that proposition. In that case, the court merely *assumed*, for the sake of discussion, the proposition argued here by CTDC, but the court made no such ruling. (*Harrisburg-Raleigh*, 126 Ill. 2d at 342-43, 533 N.E.2d at 1079.) We believe the correct rule is set forth in *Skil Corp. v. Korzen* (1965), 32 Ill. 2d 249, 252, 204 N.E.2d 738, 740, where our supreme court stated: "[E]vidence that land was acquired for an exempt purpose does not eliminate the need for proof of actual use for that purpose. Intention to use is not the equivalent of use."

■ Accordingly, we believe that the failure to put the property in question to any use, charitable or otherwise, from the late 1970's until 1989 compels the conclusion that the property should not have been granted the tax exemption requested. We agree that instanta-

neous use of the property for a charitable purpose is not required. If some steps had been taken over the years in furtherance of the claimed charitable purpose, the result in this case may have been different. However, CTDC simply waited too long.

Affirmed.

WELCH and CHAPMAN, JJ., concur.