No. 2--07--0686     Filed: 9-19-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LEADERTREKS, INC., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--TX--5 |
| | ) | |
| THE DEPARTMENT OF REVENUE, | ) | Honorable |
| | ) | Edward R. Duncan, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

Plaintiff, LeaderTreks, Inc., applied for a real property tax exemption for 2005. Defendant, the Department of Revenue (Department), denied the application, ruling that plaintiff's property was not used exclusively for religious purposes pursuant to section 15--40 of the Property Tax Code (Code) (35 ILCS 200/15--40 (West 2006)). An administrative law judge (ALJ) affirmed the Department's decision, and LeaderTreks sought administrative review. The circuit court reversed the Department. The Department appeals, arguing that the Department's decision was not clearly erroneous. We agree and reverse the circuit court.

BACKGROUND

LeaderTreks owns a condominium office space in a one-story, brick building in Carol Stream, Illinois. After the Department denied LeaderTreks' application for a tax exemption, LeaderTreks appealed and presented evidence at a hearing before the ALJ.

The sole witness at the hearing was Douglas Franklin, LeaderTreks' president. He testified as follows. LeaderTreks is an Illinois nonprofit corporation that was previously named Adventures in Student Missions, Inc. LeaderTreks is not a church and is not incorporated by a church or ecclesiastical organization. Franklin is not an ordained minister, pastor, or respondent representative of any religious group, but he has a background as a youth pastor and has served in that position at three different churches. LeaderTreks employs about 25 other full-time employees.

According to the articles of incorporation, LeaderTreks' purposes are to (1) administer the gospel of Jesus Christ within the state of Illinois, throughout the United States, and around the world by providing high school and college-age students with "Gospel Missions" training and hands-on ministry experience through planning, organizing, and leading short-term mission trips within the United States and abroad; (2) promote freedom of worship and liberty of expression, within the limits of its own statement of faith and doctrine, among its own ministers and participants; and (3) provide for the needy.

LeaderTreks' operations are directed toward providing services to Christian churches and church members that have an interest in fulfilling the "Great Commission," which is a biblical injunction found in Acts 1:8, to go forth and present the good news of Jesus Christ. LeaderTreks' mission is to develop leaders to fulfill the Great Commission by partnering with churches to provide expertise in the development of student leaders. To that end, LeaderTreks offers churches educational resources, training materials, trips that focus on leadership development, Bible-study curricula, spiritual-gift tests, character assessments, and other materials related to the development of students.

LeaderTreks also conducts seminars, offering mentoring and practices to help students grow

as leaders. Franklin described LeaderTreks "as [a] student leadership development ministry using trips, innovative training and curriculum to help students identify and develop their personal leadership skills. We partner with youth leaders who are passionate about helping develop the next generation of leaders in church and culture. Our experiences challenge and change participants. Students return confident and motivated, with a broadened world-view and a new vision of how they can lead and serve others."

Franklin testified that LeaderTreks works with roughly 70 churches. Franklin explained that many churches are looking for ways to develop their students as Christ followers and for new things to do with their youth, and he noted that leadership development is very popular as such. Franklin depicted one type of leadership training that utilized power-point presentations with interactive games based on biblical stories.

LeaderTreks utilizes the property as its administrative office. The office is organized around different departments, which include curriculum, marketing, booking, training, operations, and human resources. Franklin testified that LeaderTreks is not a travel agency. Of the 75 trips scheduled for the 2006 summer, only two were individual trips. LeaderTreks did not set up the transportation for the group trips. LeaderTreks' staff meets groups at the sites of the service projects.

The cost for training events ranges from $59 to $79 per person. There is also a cost for the mission, wilderness, and adventure trips. LeaderTreks staff members who attend the trips raise their own support through donations. Donations come through the organization for each staff person, as well as for the ministry, along with fees paid by the participants. In some cases the church involved provides a stipend or a fee. Sometimes, the church pays for all of its students' costs. Leadertreks

realizes no profits in these endeavors.

LeaderTreks provides support to two missionaries, one in Capetown, South Africa, and one in San Jose, Costa Rica. LeaderTreks provides training, sends donations, and acts as an intermediary between the two missionaries and their supporters. LeaderTreks also directs some leadership trips to these missions.

LeaderTreks offered no documentary evidence regarding its financial activities for 2005. It did submit evidence of financial activities for the year that ended in September 2004. This evidence revealed that LeaderTreks received over $868,000 in program service fees and slightly less than $60,000 in contributions. Its five greatest functional expenditures for that same period included: $421,141 for mission trips; $323,518 for salaries and wages; $92,917 for wilderness/adventure trips; $91,187 for marketing expenses; and $50,456 for professional fees.

The ALJ concluded that LeaderTreks did not satisfy its burden to prove that it was organized and operated exclusively for religious purposes, and the ALJ recommended denial of the tax exemption. In sum, the ALJ characterized LeaderTreks as providing "primarily *** tour guides and trail leaders" for those on trips, along with "the booklets for attendees to review on their own," and the ALJ found that LeaderTreks had not engaged in practices other than those in furtherance of religious education for the benefit of churches.

LeaderTreks filed a complaint for administrative review in the circuit court on September 26, 2006. The circuit court reversed the decision of the Department, finding that the ALJ had reached "some erroneous conclusions."

The circuit court found that the ALJ erroneously concluded that LeaderTreks acted as a bookseller and travel agency for religious-minded customers and that the staff actually acted as tour

guides or trail leaders and provided booklets to trip attendees to review on their own. The circuit court relied upon Evangelical Teacher Training Ass'n v. Novak, 118 Ill. App. 3d 21 (1983) (ETTA), which considered the plaintiff's charter and bylaws as well as the actual facts relating to the plaintiff's method of operation in determining whether it was organized and operated exclusively for an exempt purpose. The circuit court found that LeaderTreks' bylaws show an exclusively religious function in its training of youth, in a fashion that an individual church may be unable to perform, and that Franklin's testimony "shows that's what [LeaderTreks] did and is doing." The Department timely appealed. On appeal, the Department argues that its decision to deny the property tax exemption was not clearly erroneous. For the reasons that follow, we agree.

ANALYSIS

A. Standards of Review

We review the decision of the Department, not that of the circuit court. Central Illinois Light Co. v. Department of Revenue, 336 Ill. App. 3d 908, 911 (2003). The Department was confronted with a "mixed question of law and fact," and therefore we must accept the Department's answer unless it is clearly erroneous. Comprehensive Community Solutions, Inc. v. Rockford School District No. 205, 216 Ill. 2d 455, 472 (2005). Such review is significantly deferential, and we will reverse only where, on reviewing the entire record, we are left with the definite and firm conviction that a mistake has been committed. Elementary School District 159 v. Schiller, 221 Ill. 2d 130, 143 (2006).

In reviewing the Department's decision, we must keep in mind that it has a duty to resolve all debatable questions in favor of taxation, as we do. See Rogers Park Post No. 108, The American Legion, Department of Illinois v. Brenza, 8 Ill. 2d 286, 290 (1956). " 'Taxation is the rule[;] tax

exemption is the exception.' " City of Chicago v. Illinois Department of Revenue, 147 Ill. 2d 484, 491 (1992), quoting Rogers Park Post No. 108, 8 Ill. 2d at 289-90. The party claiming the exemption has the burden of proving the entitlement thereto, and because any factual ambiguities will be resolved in favor of taxation, the proof necessarily must be clear and conclusive. Swank v. Department of Revenue, 336 Ill. App. 3d 851, 855-56 (2003).

### B. The Scope of the Term "Religious Purposes"

LeaderTreks claims a real property tax exemption for 2005 under section 15--40(a) of the Code, which provides as follows:

> "(a) Property used exclusively for:
>
> (1) religious purposes, or
>
> (2) school and religious purposes, or
>
> (3) orphanages

qualifies for an exemption as long as it is not used with a view to profit." 35 ILCS 200/15--40(a) (West 2006).

The issue before the Department was whether, during 2005, LeaderTreks' property was "used exclusively for *** religious purposes" and "not used with a view to profit." 35 ILCS 200/15--40 (West 2006). "Exclusively" refers to the primary purpose for which the property is used. Evangelical Hospitals Corp. v. Department of Revenue, 223 Ill. App. 3d 225, 230 (1991).

### C. The Extent to Which LeaderTreks Used the Property for "Religious Purposes"

The Department contends that LeaderTreks fell short of meeting its burden on virtually every factor by which it must demonstrate a primarily religious purpose. Adopting the ALJ's conclusions, the Department asserts that the ALJ correctly found, inter alia, that LeaderTreks' staff acted primarily

as tour guides or trail leaders for those on trips and provided booklets for attendees to review on their own. We agree with the Department and the ALJ that, throughout 2005, plaintiff's property was ineligible for the requested tax exemption because it was not used exclusively for religious purposes.

An examination of the case law will help to explain why we find that the Department's decision is not clearly erroneous. In Congregational Sunday School & Publishing Society v. Board of Review, 290 Ill. 108 (1919), the plaintiff operated a missionary department that organized Sunday schools and maintained missionaries to assist these schools, published and circulated several religious periodicals, published and sold religious books, and published educational materials that it sold specifically to Sunday schools. The plaintiff's Chicago store sold religious books and supplies. The plaintiff relied on donations for its funds. The Chicago store did not make substantial profits, and the profits it made in a given year were devoted to maintaining the missionary department. Congregational Sunday School, 290 Ill. at 111.

The plaintiff sought a personal property tax exemption for its materials, claiming that they were used exclusively for a religious purpose and that the plaintiff was an institution of public charity. Because these grounds were so "closely associated," the supreme court considered them together. Congregational Sunday School, 290 Ill. at 112. The court allowed the exemption, reasoning that the plaintiff's dominant purpose was to spread the gospel and that the plaintiff did this directly by distributing its religious books and Sunday school supplies. The court observed also that the plaintiff's work was "to send its workers and missionaries into those parts of our land where religious teaching among the young has been neglected, and there to take the young into Sunday schools for moral and religious instruction and provide for them wholesome literature." Congregational Sunday School, 290 Ill. at 117.

In Scripture Press Foundation v. Annunzio, 414 Ill. 339 (1953), the plaintiff was a nonprofit corporation that published and distributed Christian literature, and it sought an exemption from unemployment compensation contributions on the ground that it was organized and operated exclusively for religious purposes. The supreme court relied on the corresponding property tax exemption provisions in finding that the plaintiff was not exempt. However, the court appeared to partially abrogate its holding in Congregational Sunday School by ruling that the mere publication and distribution of religious literature is not a religious purpose. The court explained:

"[Plaintiff] was incorporated and organized by [people], who although Christian persons with a long record of religious service, were neither ordained ministers, pastors, nor representatives of any ecclesiastical or church organization. No church or ecclesiastical organization was an incorporator or a member of the corporation. A study of its charter powers in the light of its actual operation indicates that [plaintiff] was organized for the primary purpose of producing, distributing and selling religious literature and supplies to religious organizations. It is true that the language of its charter powers indicates a purpose for 'The dissemination of the Gospel, the distribution of the Scriptures, of extracts therefrom, of devotional and other literature relating thereto, and of helps and supplies for use in Christian activities.' Such purpose is accomplished only by the distribution and sale of such literature and supplies to religious organizations, which organizations in turn use them in conducting their religious activity. We are of the opinion that *** such activities are secular in nature and not exclusively religious, *** the same as any other commercial service organization furnishing to a religious institution necessary services such as fuel, lights, building material or any other item necessary to its ordinary and customary functioning."

(Emphasis added.) Scripture Press Foundation, 414 Ill. at 355-56.

The court further noted the following: (1) the evidence did not indicate that the plaintiff itself engaged directly in religious activities, such as maintaining missionaries in the field; (2) the plaintiff did not conduct Bible or Sunday schools; and (3) the plaintiff's profits were reinvested in production and sales for a profit and, upon a dissolution, the plaintiff's assets could go to secular organizations or private individuals, including its officers. Scripture Press Foundation, 414 Ill. at 356-58. Since Scripture Press Foundation, courts have adhered to its distinction between nonprofit organizations that engage directly in religious activities, such as worship, missionary work, and religious education, and secular organizations that merely supply religious entities with materials to conduct such activities. Cook Communications Ministries v. Department of Revenue, 345 Ill. App. 3d 753, 760-61 (2004).

LeaderTreks finds ETTA applicable here. In that case, the plaintiff, a nonprofit association of religious educational institutions, promoted Christian education by sending its officers to lecture at religious colleges, advising religious educators on training seminary students, preparing materials for Bible courses that were written by faculty at member schools, and distributing its publications, which were often free, to libraries and schools. ETTA, 118 Ill. App. 3d at 23. We affirmed the plaintiff's property tax exemption and in doing so distinguished Scripture Press Foundation in several ways. Unlike in Scripture Press Foundation, ETTA's constituents were religious organizations and its officers were ministers. ETTA, 118 Ill. App. 3d at 22-23. Also, upon its dissolution, ETTA's assets would go to a charitable purpose. ETTA, 118 Ill. App. 3d at 25. More importantly, ETTA did more than merely distribute religious materials to others; its officers were actively involved in religious teaching. This served "to directly accomplish ETTA's corporate purpose, the promotion

of Christian education, in a manner that could not be achieved through the mere sale or distribution of its books and religious materials." ETTA, 118 Ill. App. 3d at 26.

The Department relies on Cook Communications. There, the majority of the plaintiff's income was earned by publishing Christian educational materials and selling them to churches, teachers, and Christian bookstores. The plaintiff also acquired a Christian greeting card company, which was later sold at a huge profit. We determined that the plaintiff was not entitled to a religious property tax exemption under section 15--40 of the Code. No evidence established that the plaintiff was affiliated with any particular religious organization or that its officers were members of the clergy. Cook Communications, 345 Ill. App. 3d at 761-62. More importantly, the evidence showed that the plaintiff directly engaged in little or no specifically religious activity and did not use its property for any such purpose. Rather, the plaintiff achieved its corporate purpose, advancing Christian education, almost entirely by selling Christian educational materials to organizations that then did the actual teaching; the plaintiff itself did no religious teaching. Cook Communications, 345 Ill. App. 3d at 762. Additionally, the plaintiff received the bulk of its revenues either from such sales or from selling items produced by its for-profit greeting card company. Only a tiny portion of the plaintiff's revenues came from contributions, and the plaintiff made a profit in one of the two fiscal years that included part of the relevant calendar year. Cook Communications, 345 Ill. App. 3d at 762. Moreover, until the plaintiff divested itself of the for-profit card company, its property was being used in large part "with a view to profit" and was therefore ineligible for the requested exemption. Cook Communications, 345 Ill. App. 3d at 763.

The opinions depicted above do not formulate a completely clear or fixed formula for deciding whether property is being used primarily for a religious purpose. Moreover, each case in

which a tax exemption is sought must be determined upon the facts presented. Inter-Varsity Christian Fellowship v. Hoffman, 62 Ill. App. 3d 798, 801 (1978). In our view, the facts presented in this case fall short of meriting a tax exemption.

At first blush, the facts in this case appear to be similar to those in ETTA in that LeaderTreks sends staff members to train and advise church youth to develop into student leaders of the church either at church sites or on religious trips. The materials distributed were written and produced by LeaderTreks. However, unlike in ETTA, LeaderTreks submitted no evidence establishing the background of its employees, how they were formally associated with their clientele, or the qualifications of those who developed its curriculum. No evidence indicated that ministers, seminary graduates, or people with any religious training led the trips or taught in the churches. In ETTA, the materials were written by faculty at member schools, edited by committee and by ETTA, and then sold by ETTA. The chief officers of ETTA were both ministers and doctors of education, and their activities were primarily directed toward teaching and demonstrating teacher training techniques.

Moreover, ETTA's activities served to directly accomplish ETTA's corporate purpose. Here, LeaderTreks' stated purpose is "to plan, organize, and lead short-term mission trips, within the United States and abroad, for high school and college age students." LeaderTreks' focus is on domestic and international trips, with a religious component, not on the education of individuals who either are in the process of becoming or have already become teachers, instructors, or professors of religious studies. The "purposes" section of LeaderTreks' articles of incorporation and bylaws states nothing about religious educational studies or teaching youth about religious education as a career. In fact, the record shows that the main focus of "every [LeaderTreks] trip" or "leadership training event" is teaching and learning "leadership so that students can become the future leaders of the

church." This is the central purpose of Leadertreks' mission trips and wilderness trips. However, we agree that leadership training does not necessarily mean that it cultivates future pastors or ministers any more than it seeks the generic development of young people; leadership development is not per se a religiously imbued undertaking.

D. The Failure to Establish That the Property Was Not Used Primarily With a View to Profit

The Department asserts that LeaderTreks did not establish that its property was not used primarily with a view to profit, because it failed to provide relevant, updated financial data about the tax year in question. Under the plain language of section 15--40, Leadertreks needed to introduce evidence that its primary activities on the property, in addition to being "religious," were not conducted "with a view to profit." 35 ILCS 200/15--40 (2006); Three Angels Broadcasting Network, Inc. v. Department of Revenue, 381 Ill. App. 3d 679, 696 (2008). The Department contends that the failure to provide up-to-date figures about LeaderTreks' finances for 2005, rather than the 2004 auditor's report it did submit, made it impossible to determine whether LeaderTreks' property was not used with a view to profit.

LeaderTreks argues that the Department waived this argument by failing to assert it before the circuit court. However, the Department correctly points out that, not only are the parties in administrative review not required to make arguments in the circuit court to preserve them for review in the appellate court, but also the circuit court cannot hear any new evidence or arguments. See Ikpoh v. Zollar, 321 Ill. App. 3d 41, 47 (2001) (circuit court in administrative review is "analogous to" appellate court). Accordingly, we reject LeaderTreks' waiver argument.

We further point out that, while LeaderTreks had a 2.7% loss in 2004, and Franklin stated that no profits are realized in its endeavors, this does not permit an inference that in 2005

LeaderTreks did not use its property with a view to profit, especially given that it relied primarily on fees and not on contributions. At the very least, LeaderTreks needed to introduce some specific evidence regarding how the property was not used with a view to profit in 2005. For example, ETTA provided evidence that it did not charge fees for speaking services, that faculty members at member schools received a token honorarium for the courses they wrote, and that ETTA often donated its course and text materials to libraries and to "mission schools." ETTA, 118 Ill. App. 3d at 23.

LeaderTreks did present evidence of missionary activities that is conducts. However, this evidence is irrelevant to the determination of whether its primary activities on the subject property were conducted with a view to profit. We must evaluate the primary use of the subject property, and not LeaderTreks' activities in other locations, to determine whether the activities were conducted with a view to profit. See Three Angels Broadcasting, 381 Ill. App. 3d at 697. Moreover, the fact that profits are not distributed to any individual should not factor into the analysis. Three Angels Broadcasting, 381 Ill. App. 3d at 697.

The party seeking an exemption bears the burden of proving by clear and convincing evidence that it has the right to the exemption. Methodist Old Peoples Home v. Korzen, 39 Ill. 2d 149, 155 (1968). Further, we reiterate that, when determining whether property is within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. Methodist Old Peoples Home, 39 Ill. 2d at 155. LeaderTreks failed to prove by clear and convincing evidence that it did not operate the subject property with a view to profit in 2005. Thus, the decision of the Department was not clearly erroneous.

Based on the foregoing, the judgment of the circuit court of Du Page County is reversed.

Reversed.

McLAREN and BOWMAN, JJ., concur.