# Illinois Official Reports

## Appellate Court

---

### *Village of North Riverside v. Boron*, 2016 IL App (1st) 152687

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF NORTH RIVERSIDE, Plaintiff-Appellant, v. ANDREW BORON, in His Official Capacity as Director of Insurance, and THE ILLINOIS DEPARTMENT OF INSURANCE, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-15-2687 |
| Filed | December 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-17951; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Burton S. Odelson and Michael J. Hayes, Jr., of Odelson & Sterk, Ltd., of Evergreen Park, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case concerns the Village of North Riverside's (Village) failure to meet its statutory contribution obligations to its police and firefighter pension funds. At an administrative hearing, the Village argued that its noncompliance should be excused because it had good and sufficient cause for failing to meet its obligations. The administrative hearing officer rejected the Village's arguments, and the hearing officer's recommendation was accepted by the Director of the Public Pension Division. The Village sought administrative review in the circuit court which affirmed the decision. The Village now seeks review here, and we confirm the administrative ruling and affirm the circuit court's decision.

¶ 2                                    BACKGROUND

¶ 3    The Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2012)) requires municipalities to contribute to the police and firefighter pension funds. See 40 ILCS 5/3-125 (West 2012) (police); 40 ILCS 5/4-118 (West 2012) (firefighters). The municipalities are required to pay the amount to cover the "normal cost" that remains after the employees' contributions are factored in. 40 ILCS 5/3-125, 4-118 (West 2012).

¶ 4    The General Assembly enacted legislation to create the Public Pension Division (Division), which is charged with administering and enforcing the provisions of the Pension Code. 40 ILCS 5/1A-101 (West 2012). Whenever the Division determines that a government unit has failed to comply with the law, the Director of the Division (Director) may hold a hearing where the government must show cause for its noncompliance. 40 ILCS 5/1A-113(d)(3) (West 2012). If, at the conclusion of the hearing, the Director determines that "good and sufficient cause" for noncompliance has not been shown, the Director is entitled to order compliance and assess penalties. 40 ILCS 5/1A-113(d)(4)-(5) (West 2012). The General Assembly mandated that the Director develop standards and criteria to be used to administer the penalty provision set forth in section 1A-113. 40 ILCS 5/1A-113 (West 2012).

¶ 5    The Division used its rulemaking authority by issuing certain regulations. See 50 Ill. Adm. Code 4435.10 (1998). The relevant regulation in this case states that, at the hearing, in determining whether the government has met its burden of showing "good and sufficient cause" for noncompliance,

> "the Director may consider, but is not limited to, the following:
>
>> 1) Evidence that, due to no fault of the pension fund, governmental unit or elected or appointed official of a governmental unit, there was an unforeseeable or unexpected delay or occurrence;
>>
>> 2) Evidence of an uncontrollable circumstance; and
>>
>> 3) Evidence pertaining to Acts of God." 50 Ill. Adm. Code 4435.80(c) (1998).

¶ 6    Defendant Illinois Department of Insurance determined that plaintiff Village violated the Illinois Pension Code when it failed to make full, actuarially designated annual contributions to its police pension fund from 2008 to 2012 and its firefighter pension fund from 2009 to 2012. The Village acknowledged that it had not met its contribution obligations but asserted that there were mitigating circumstances and that it intended to take remedial action in the coming years. The Director called a hearing to give the Village an opportunity to show "good and sufficient cause" for its violations.

¶ 7    At the hearing, the Village offered evidence through its finance director, Sue Scarpiniti. Scarpiniti testified that North Riverside is a village with a small residential community, but that it has a relatively large commercial base. As a result, the Village has a larger police and firefighter force than most communities of similar population. Scarpiniti explained that the Village's inability to meet its contribution obligations was a result of the recession occurring around 2009. The Village lost funds in sales tax receipts, property tax receipts, and shared revenue from the state during this period.

¶ 8    Scarpiniti testified that, in 2012, the Village lost its largest sales tax producer, a restaurant supply company, to another suburb in Du Page County. That business alone accounted for 15% of the Village's annual sales tax collections, and sales tax collections account for 60% of the Village's total annual operating revenue. The Village also received less revenue from the state which is derived from income taxes and other taxes and fees the State collects. Scarpiniti testified that property tax receipts also decreased at this time because the assessed property values decreased during the economic downturn. Many property owners were successful in lowering their property taxes through appeals. The property tax revenue problem was compounded, Scarpiniti stated, by the fact that the Village is a "non-home rule" community and is bound by the Property Tax Extension Limitation Law (35 ILCS 200/18-185 (West 2012)). That law caps the amount that a community can increase its property tax levy each year, so it prohibited the Village from making any significant increases in property taxes to cover the deficiencies it was experiencing.

¶ 9    The Village issued bonds in an attempt to attract new businesses, and it issued debt certificates to refinance a loan. The Village sold additional debt certificates to make up for the loss of the revenue resulting from the departed restaurant supply company. All of these issuances negatively affected the Village's credit rating and it received three successive downgrades from 2001 to 2014.

¶ 10    On the other hand, the hearing also revealed that from 2000 to 2011, there were actually six years in which the Village did not make any contributions to the police or firefighter pension funds. Scarpiniti acknowledged that the Village's failure to contribute over the years would mean it would need to contribute more in future years. Over the same period, however, the Village made the full required contribution to the Illinois Municipal Retirement Fund covering its other employees because that fund "had an enforcement provision."

¶ 11    The evidence also showed that from 2000 to 2012, sales tax receipts actually increased as a result of two sales tax hikes, from $4,797,654 in 2000 to $8,479,401 in 2012. Scarpiniti testified that the Village subsidized garbage collection and water services for the residents even though other municipalities were passing along the cost increases for those services to their residents. Scarpiniti testified that whatever additional revenue streams the Village was able to create over the relevant period were used to fill the voids in the Village's normal revenue lost as a result of the economic downturn.

¶ 12    The hearing officer issued a lengthy recommended order detailing his findings of fact and conclusions of law. In it, he found that the Village's proffered reasons for noncompliance did not amount to good and sufficient cause for its failures to meet its pension contribution obligations. The Director adopted the findings of fact and conclusions of law submitted by the hearing officer and ordered the Village to comply with its obligations and submit evidence of that compliance within 30 days. The Village sought administrative review of that decision in the circuit court, and following oral argument, the circuit court affirmed the

administrative decision. The Village now seeks review here.

¶ 13                                    ANALYSIS

¶ 14       There is some disparity in the parties' arguments concerning what standard of review we are supposed to apply, but it does not seem that their positions necessarily conflict. On appeal, the Village argues that the regulation purporting to define what constitutes "good and sufficient cause" (50 Ill. Adm. Code § 4435.80) is unconstitutional because it is too vague. So, on that question of law, our review is *de novo*. *American Federation of State, County, & Municipal Employees (AFSCME), Council 31 v. State*, 2015 IL App (1st) 133454, ¶ 11; *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). But its other argument—that the Village actually did show good and sufficient cause—presents a mixed question of law and fact and, therefore, we will only overturn the agency's decision if it is clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 15       The Village argues that "good and sufficient cause" as it is used in the Illinois Pension Code and derivatively in the pension subchapter of the Illinois Administrative Code is too vague, and therefore, the regulation is unconstitutional. The Village contends that because the term is so undefined, it gives the hearing officer too much discretion and allows the interpretation of the regulation to vary wildly from case to case based on the "whims of different hearing officers who are charged with enforcing the rule." The constitutionality of the regulation has apparently never been challenged.

¶ 16       The regulation states that the Director may consider: evidence of whether there was an unforeseeable or unexpected delay or occurrence, an uncontrollable circumstance, or any evidence pertaining to Acts of God. 50 Ill. Adm. Code 4435.80(c) (1998). The regulation also states that the Director is not limited to considering those factors and it leaves open ended what other considerations might be relevant. See *id.* The Village contends that the rule grants the Director unlimited discretion and is, thus, not appropriately tailored to the Illinois Administrative Procedure Act's directive that "standards shall be stated as precisely and clearly as practicable." 5 ILCS 100/5-20 (West 2012).

¶ 17       Contrary to the Village's position, the regulation provides sufficiently-tailored standards from which the agency can render a decision as to whether the government has met its burden of showing good and sufficient cause for failing to meet its contribution obligations. The regulation sets out broad relevancy standards but, really, that should inure to the benefit of the government units. If anything, the argument that the regulation is too vague should belong to defendants. The regulation basically gave the Village free rein to present any convincing reason that it was unable to comply with its statutory obligations. Even with that wide latitude, the hearing officer found that the Village was unable to show good cause.

¶ 18       There are innumerable reasons why a municipality might not be able to meet a financial obligation at a given time. The agency cannot anticipate all of those reasons with much certainty. But the regulation here gives guidance to a hearing officer about the type of circumstances to look for to determine if a government unit's failure to meet its obligations should be excused. That the regulation has broad relevancy standards makes sense and explains why we defer to agencies' findings in cases like this because they are in a better position than the court to decide these matters because of their expertise in the given field. *Ikpoh v. Department of Professional Regulation*, 338 Ill. App. 3d 918, 924 (2003).

- 4 -

¶ 19    The Village does not complain that the hearing officer actually relied on irrelevant evidence—evidence outside the scope of the regulation's good cause criteria. And it is not as if the hearing officer precluded the Village from presenting certain evidence that it suggests could have led to a different outcome. The Village has not said what other theory it might have relied upon to show good cause but could not because of the regulation. Especially in these circumstances, the language of the regulation did not result in an arbitrary or discriminatory result. In fact, even if we accepted the premise that the regulation is too vague, the Village could not show any prejudice at all.

¶ 20    What transpired at the hearing also belies the Village's position. Its strategy was to assert that the economic downturn around 2009 was the cause of its inability to pay. That position fits squarely within the unforeseeable occurrence or uncontrollable circumstance criteria that the regulation calls for. A statute is not unconstitutionally vague if it is explicit enough to serve as a guide to those who must comply with it. *General Motors Corp. v. Illinois State Motor Vehicle Review Board*, 224 Ill. 2d 1, 24 (2007). The Village relied on its unexpected drop in sales tax, property tax, and shared revenue from the State and on its deteriorating credit and financial position to justify its failures to fund the pensions. That was a reasonable strategy to take under the regulation and is exactly the type of "cause" the regulation calls for—the Village was just simply unsuccessful in meeting its burden.

¶ 21    The Village also argues that the agency erred because it applied an overly restrictive and incomplete standard to the evidence, resulting in an arbitrary and erroneous decision. However, there is no indication that the hearing officer failed to consider certain evidence. In fact, the hearing officer's detailed recommended order has 102 specific findings of fact that touch on all of the Village's evidence. Again, the Village does not point to anything that should have been considered but was affirmatively omitted from consideration, and this argument is really just a corollary to its next challenge—whether "good and sufficient cause" was established.

¶ 22    Whether the Village met its evidentiary burden to show good and sufficient cause for failing to meet its contribution obligations is a mixed question of law and fact. An administrative agency's decision is a question of mixed law and fact will be found to be clearly erroneous only where a reviewing court is left, on the entire record, with a definite and firm conviction that a mistake has been committed. *Id.* at 18. That is not the case here.

¶ 23    The Village presented evidence that its revenue receipts mirrored the recession. It lost revenue in the form of sales tax, property tax, and shared revenue from the state. But the hearing officer, and thereafter the Director by ratification, heard all the evidence and found that the Village had simply made choices to allocate funds elsewhere in derogation of its statutory duties. The evidence showed that there were ways in which the Village could have raised additional funds. The hearing also revealed that the Village in fact not only missed payments late in the decade as they were charged with doing, but in fact made no annual contribution six times between 2000 and 2011 and made less than the full contribution in three of the other years. Most of the violations were before the recession on which the Village based its whole case.

¶ 24    Also, Scarpiniti testified that the Village fully funded the Illinois Municipal Retirement Fund covering its other employees because that fund had an enforcement provision. That admission shows a conscious choice in the Village's allocation of resources and acknowledges a deliberate effort to allocate resources in places other than the police and

firefighter pension funds. Even when the Village raised the sales tax and realized an increase in sales tax revenue, the money was not given to the pension funds but was instead directed to other areas hit by the recession. Even when other similar municipalities were raising costs for garbage removal and water services, the Village chose to subsidize those things rather than collect more money. The Village, as all government units, has to make choices where to spend money. And here there was evidence that the Village spent its money on discretionary endeavors it prioritized more than contributing to the police and firefighter pensions. That is a violation of the Illinois Pension Code, and the Director's decision was not clearly erroneous.

¶ 25                                        CONCLUSION

¶ 26        Accordingly, we confirm the administrative ruling and affirm the decision of the circuit court.

¶ 27        Affirmed.